IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| PAUL JODY YANCY, | : |
| Plaintiff | : |
| v. | : CASE NO. 4:11-CV-34-CDL-MSH |
| ERROLL B. DAVIS, Jr., *et al.*, | : |
| Defendants. | : |

## ORDER GRANING IFP, DENYING APOPINTMENT OF COUNSEL, AND REPORT AND RECOMMENDATION

On April 7, 2011, Plaintiff filed the instant action claiming that he was discriminated against on the basis of his disability in violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act. Specifically, Plaintiff claims that the Defendants have violated Title II of the ADA, 42 U.S.C. § 12132, ADA's retaliation provision in Title IV, 42 U.S.C. § 12203, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Presently pending before the Court are Plaintiff's motions to proceed *in forma pauperis* ("IFP") in this action and for appointment of counsel. For the reasons discussed below, Plaintiff's motion to proceed *in forma paueris* is granted, but his motion for appointment of counsel is denied. Additionally, since the Court is granting Plaintiff's motion to proceed IFP, the Court has reviewed Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and recommends dismissal of some of Plaintiff's claims.

### BACKGROUND

Taking the allegations in the Complaint as being true and construing this *pro se*

action liberally as is required, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), the following facts are shown in this case:

Plaintiff brings this action claiming that he was discriminated against by the Columbus State University ("CSU") nursing school and its employees based on his disability. Plaintiff became disabled on March 30, 2005, which resulted in Plaintiff having a disfigured abdomen. (Compl. ¶¶ 17-18.) In 2006 and 2007, Plaintiff participated in vocational rehabilitation and was told that he could seek part-time employment. (*Id.* ¶¶ 19-23.) Plaintiff, after consulting with medical personnel, determined that nursing would be an appropriate area in which to seek such employment. (*Id.* ¶ 24.)

In 2010, Plaintiff was accepted into the CSU nursing program. (Compl. Ex. 4.) Prior to beginning his clinical training in the nursing program, Plaintiff had to fulfill certain CSU set prerequisites: (1) a criminal background check/drug screen; (2) provide a health history and pass a physical exam; (3) provide proof of certain immunizations; and (4) be certified in CPR. (Compl. Ex 4 at 1; ¶ 29.) Plaintiff fulfilled these requirements and began his class room and clinical training in August 2010. (Compl. ¶¶ 29-30.)

On September 14, 2010, Defendant Elizabeth Frander, an associate professor at CSU, saw Plaintiff's incisional hernia—the disability upon which this action lies. (Compl. ¶ 31.) Defendant Frander questioned Plaintiff about his hernia, and Plaintiff explained that his hernia has resulted in his being disabled. (*Id.*) Defendant Frander required Plaintiff to show his hernia to Defendant Stephanie Lewis, another associate professor at CSU. (*Id.*) Thereafter, on September 23, 2010, Plaintiff met with

Defendants Frander and Lewis and was told that he could not participate in clinical training due to his hernia. (Compl. ¶ 32.) Plaintiff informed Defendants Frander and Lewis that he is disabled, but not asking for accommodations since he had not experienced any physical requirements that would necessitate accommodations. (*Id.*) Defendants Frander and Lewis informed Plaintiff that he could not return to clinical training without a letter from his doctor stating that he had sufficient lifting capacity to not be injured in clinical. (*Id.*) Plaintiff informed Defendants Frander and Lewis that keeping him away from clinical training was a violation of the ADA and that placing a requirement on him that was not placed upon other students is also a violation of the ADA. (*Id.*) Despite this meeting with Defendants, Plaintiff was allowed to attend clinical training on October 5 and October 6, 2010. (Compl. ¶ 34.)

On October 7, 2010, Plaintiff met with Defendant Frander and Ms. Gail Jones. (Compl. ¶ 35.) At that meeting Plaintiff provided Defendant Frander with a copy of his statement of disability from the Social Security Administration. (*Id.*) Defendant Frander reaffirmed at this meeting that Plaintiff would be unable to attend future clinical training classes if Plaintiff did not provide a letter from his doctor concerning Plaintiff's lifting abilities. (Compl. ¶35, *see also* Compl. Ex. 5, ECF No. 1-5.) Defendant Lewis also explained to Plaintiff that Plaintiff could not attend clinical without a letter from his doctor describing any physical restrictions. (Compl. Ex. 6, ECF No. 1-6.) Plaintiff was prevented from attending clinical training on October 13. (Compl. ¶ 37.)

On October 15, 2010, Plaintiff received an e-mail from Sheri Noviello, the Associate Director of Nursing at CSU, explaining that CSU had not received a letter from

Plaintiff's doctor "either releasing [Plaintiff] to attend clinical without restrictions or allowing [Plaintiff] to return to clinical with specific restrictions and a specific time frame for those restrictions." (Compl. Ex. 7, ECF No. 1-7.) Plaintiff was also informed by Defendant Noviello that he would not be allowed to return to clinical training until CSU received such documentation. Plaintiff met with Defendants Frander and Noviello on October 18, 2010, and was again told to submit documentation regarding any potential physical restrictions to CSU. (Compl. ¶ 40.)

On that same day, Plaintiff provided Defendant Frander a letter from his doctor dated October 11, 2010 which stated that Plaintiff could "lift 50 pounds routinely and occasionally more." (Compl. Ex. 8, ECF No. 1-8.) Plaintiff was thereafter allowed to attend clinical on October 19, 2010. At that class, Plaintiff claims he was "publically chastised" by Defendant Tonya Kemper, the CSU clinical instructor, for saying "Good morning girls" to a group of women. (Compl. ¶ 42.) On October 20, 2010, Plaintiff turned in a letter to Defendant Lewis requesting an exception to the attendance policy for clinical training classes since he missed a class on October 13. (Compl. Ex. 11, ECF No. 1-11.)

The next day, Plaintiff was summonsed to a meeting with Defendants Noviello, Frander, and Lewis. (Compl. ¶ 44.) At that meeting, Plaintiff was informed that he had failed all his classes and was being expelled from the nursing program at CSU. (*Id.*) An officer was present at the meeting and escorted Plaintiff out of the meeting and building. (*Id.*) Plaintiff thereafter filed a complaint with the Department of Justice.

On March 7, 2011, Plaintiff filed this action in which he seeks front pay, damages,

and injunctive relief. The injunctive relief is sought against CSU and/or the Board of Regents in that Plaintiff seeks: (1) to be readmitted to the CSU Nursing Program with grades reflecting the grades he was achieving when expelled from the program; and (2) a permanent injunction requiring that CSU School of Nursing admit up to 5% persons with disabilities. Plaintiff claims that he has been discriminated against because of his disability in violation of the ADA and Rehabilitation Act.

## DISCUSSION

### I. Motion to Proceed IFP

Plaintiff moves to proceed in this action IFP. (ECF No. 3.) 28 U.S.C. § 1915 provides that a court may authorize a person who is unable to pay court fees to proceed in her action so long as that person is "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); *see Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (explaining that 28 U.S.C. § 1915(a)(1) "applies to all persons requesting leave to proceed IFP"). Furthermore, 42 U.S.C. § 2000e-5(f)(1) provides that "in such circumstances as the court may deem just, the court . . . may authorize the commencement of the action without the payment of fees, costs, or security." *See* 42 U.S.C. § 12117 (incorporating into the ADA several provisions of Title VII including 42 U.S.C. § 2000e-5). Plaintiff has established that he is indigent for the purposed of 28 U.S.C. § 1915. Therefore, his motion to proceed IFP is granted.

### II. Motion for Appointment of Counsel

Additionally, Plaintiff moves for appointment of counsel in this case. (ECF No. 2.) Under 42 U.S.C. § 2000e-5(f)(1), "in such circumstances as the court may deem just,

the court may appoint an attorney for [a] complainant . . . ." *See* 42 U.S.C. § 12117 (incorporating into the ADA several provisions of Title VII including 42 U.S.C. § 2000e-5). However, "[a]n ADA plaintiff has no absolute right to an appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the court." *Donohoe v. Food Lion Stores, Inc.*, 253 F. Supp. 2d 1319, 1321 (N.D. Ga. 2003) (internal quotation marks and citation omitted).

In determining whether to appoint counsel in a civil rights action in the Eleventh Circuit, a court must consider the following factors: "(1) the merits of the complaint, (2) the efforts of the plaintiff to obtain counsel[,] and (3) the financial ability of the complainant to hire an attorney." *Brooks v. Cent. Bank of Birmingham*, 717 F.2d 1340, 1342 n.2 (11th Cir. 1983) (citing *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309-10 (5th Cir. 1979). "The district court may also consider the ability of the complainant to understand the relevant substantive and procedural issues." *Hunter v. Dep't of Air Force Agency*, 846 F.2d 1314, 1317 (11th Cir. 1988) (citation omitted). Ultimately, the decision whether to appoint counsel is within the district court's "broad discretion" and counsel should be appointed "only in exceptional circumstances." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999) (citation omitted).

Here, Plaintiff claims that he deserves an appointed attorney in this case because "one this action is brought before the court the Defendants will have at their disposal an unlimited resource of legal help and the Plaintiff just himself[; t]his is 'David versus Goliath'!" (Mot. for Appointment of Counsel ¶ 4.) A case of a smaller entity versus a larger entity is not such an "exceptional circumstance" that it warrants the appointment of

counsel. Furthermore, there is no evidence in the record that Plaintiff has attempted to hire counsel in this case, and it is clear from the filed pleadings and motions that Plaintiff has the ability to understand the relevant substantive and procedural issues. The factors in this case weigh against the appointment of counsel. Finding no exceptional circumstances that would warrant appointment of counsel, Plaintiff's motion is denied.

**III.    Review pursuant to 28 U.S.C. § 1915(e)(2)(B)**

Pursuant to 28 U.S.C. § 1915(e), "a district court must dismiss an *in forma pauperis* action if the court determines that the action is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or seeks monetary relief against a defendant who is immune from such relief." *Thibeaux v. U.S. Attorney Gen.*, 275 F. App'x 889, 892 (11th Cir. 2008) (internal quotation marks and citation omitted). "The standards governing dismissal under Rule 12(b)(6) apply to § 1915(e)(2)(b)(ii)." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

Plaintiff has brought claims for alleged violations of ADA Title II, the Rehabilitation Act, and ADA Title IV. These claims are brought against the following defendants: Errol B. Davis, Jr., Chancellor of the Board of Regents, in his official capacity; Board of Regents of the University System of Georgia; Dr. Tim Mescon, President of CSU, in his official capacity; Dr. June Goyne, Director of the CSU School of Nursing, in her official capacity; Sheri Noviello, Associate Director of the CSU School of Nursing, in her individual and official capacities; Elizabeth Frander, in her individual and official capacities; Stephanie Lewis, in her individual and official capacities; and Tonya Kemper, in her individual and official capacities. Plaintiff, however, has not specified

7

which action is brought specifically against which Defendant. Thus, the Court addresses each count in turn to determine which claims may remain pending against which defendants.

## I. Count I—Violation of Title II of the ADA

### A. Board of Regents

The Board of Regents of the University System of Georgia is a state entity for eleventh amendment purposes. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-02 (11th Cir. 2007). "Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens." *Id.* at 1301 (citation omitted). However, Title II of the ADA "validly abrogates state sovereign immunity" to the extent that Plaintiff has brought an action for damages "against the State[] for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). Consequently, to the extent that Plaintiff is asserting a Title II claim against the Board of Regents for conduct that actually violates the Fourteenth Amendment, such claim would not be barred by Eleventh Amendment Immunity. Plaintiff, however, has failed to even allege such a claim.

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; (3) by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (internal quotation marks and citation omitted) (alteration in original). Plaintiff has not alleged that the Board of Regents took any action

or failed to take any action that in any way discriminated against Plaintiff because of his disability. In fact, the Board of Regents is not mentioned in Plaintiff's Complaint at all except in the case caption. Plaintiff has failed to state a Title II claim against the Board of Regents, and this claim should be dismissed.

Plaintiff has also sued Errol B. Davis in his official capacity as Chancellor of the Board of Regents. A suit against Defendant Davis in his official capacity is treated as a suit against the Board of Regents. *See, e.g., Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (explaining that official capacity suits are "treated as suits against the underlying entity"). Accordingly, Plaintiff's Title II claim against Defendant Davis should be dismissed for the same reason as the claim against the Board of Regents—that Plaintiff has failed to state a Title II claim against this Defendant.

B. Columbus State University Defendants

Although Plaintiff has not sued CSU in name, Plaintiff has brought this action against Tim Mescon, June Goyne, Sheri Noviello, Elizabeth Frander, Stephanie Lewis, and Tonya Kemper (collectively "CSU Defendants") in their official capacities as CSU employees. An action against these Defendants in their official capacities is treated as an action against the underlying entity—CSU. *Scott*, 405 F.3d at 1255. Thus, the action against each Defendant in his or her official capacity is repetitive and redundant. The Court therefore recommends dismissal of the Title II claims against all the CSU Defendants in their official capacities except for Dr. Tim Mescon, the CSU President.

C. Individual Defendants

To the extent that Plaintiff brings this action against Defendants Noviello, Frander,

9

Lewis, or Kemper in their individual capacities, such claims must be dismissed. The ADA provides a cause of action against an entity or employer, but not against an individual acting under color of state law. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the Disabilities Act does not provide for individual liability, only for employer liability.") "The ADA imposes *respondeat superior* liability on the employer for the discriminatory acts of its employees." *Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009). In other words, "there is no individual capacity liability under Title II of the ADA or [Rehabilitation Act]." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). Consequently, any claims pursuant to Title II of the ADA against these Defendants in their individual capacities fail to state a claim and should be dismissed.

## II. Count II—Violation of Section 504 of the Rehabilitation Act

### A. Board of Regents

To succeed on a discrimination claim under section 504 of the Rehabilitation Act, a plaintiff must show that the defendant "intended to discrimination against him on the basis of his disability." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603-04 (11th Cir. 2010) (internal quotation marks and citation omitted). Section 504 provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a). As explained above, even assuming that the Board of Regents is a

program or activity receiving federal financial assistance, Plaintiff has not alleged that the Board of Regents took any action or failed to take any action that in any way discriminated against Plaintiff because of his disability. Plaintiff has failed to state a Rehabilitation Act claim against the Board of Regents. Likewise, Plaintiff has failed to state a claim against Defendant Davis in his official capacity as Chancellor of the Board of Regents. *See Scott*, 405 F.3d at 1255. The Rehabilitation Act claims against the Board of Regents and Defendant Davis should therefore be dismissed.

B. CSU Defendants

Similarly to the Title II claims against the CSU Defendants, a Rehabilitation Act claim against each CSU Defendant in his or her official capacity claim is repetitive and redundant. The Court recommends dismissal of the Rehabilitation Act claims against all the CSU Defendants in their official capacities except for Dr. Tim Mescon, the CSU President.[1]

C. Individual Defendants

As with the ADA Title II claims against Defendants Noviello, Frander, Lewis, and Kemper in their individual capacities, any Rehabilitation Act claims against these

---

[1] The Court notes that Plaintiff has failed to specifically allege that CSU receives federal funds such that eleventh amendment immunity would be waived under 42 U.S.C. § 2000d-7. Since "CSU is [a] part of the University of Georgia system[, it] is consequently a state entity." *Sims v. Hassenplug*, No. 4:05-CV-155, 2006 WL 2882726 at *1 n.1 (M.D. Ga. Oct. 6, 2006); *see also Williams*, 477 F.3d at 1301 (explaining that UGA is entitled to eleventh amendment immunity). However, since Plaintiff is proceeding *pro se*, his Complaint is construed liberally. Solely for purposes of this preliminary review, therefore, the Court deems paragraphs 49-55 of the Complaint to be sufficient to state a claim for relief under section 504 of the Rehabilitation Act.

defendants in their individual capacities must be dismissed. "[T]here is no individual capacity liability under Title II of the ADA or [Rehabilitation Act]." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005). Consequently, any claims pursuant to the Rehabilitation Act against these Defendants in their individual capacities fail to state a claim and should be dismissed.

## III. Retaliation Claim under the ADA, 42 U.S.C. § 12203

### A. Board of Regents

Although Plaintiff has sufficiently alleged a claim of retaliation against certain CSU Defendants, Plaintiff has failed to allege such a claim against the Board of Regents or Defendant Davis. "To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) he participated in a statutorily protected activity or expression; (2) he suffered an adverse action; and (3) the adverse action was related to the protected activity." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 891 (11th Cir. 2007) (citation omitted). As explained above, Plaintiff has not alleged that the Board of Regents or Defendant Davis took any adverse action against Plaintiff or that such adverse action was in any way related to a protected activity. Plaintiff has thus failed to state a claim for retaliation against the Board of Regents or Defendant Davis. The retaliation claims against the Board of Regents and Defendant Davis should be dismissed.

### B. CSU Defendants

As is recommended above, the Court recommends dismissal of all the CSU Defendants as repetitive and redundant except for the claims against CSU President Tim Mescon in his official capacity.

### C. Individual Defendants

Unlike in a Title II ADA claim or Rehabilitation Act claim, the Eleventh Circuit has held that "an individual may be sued privately in his or her personal capacity for violating § 12203 in the public services context." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (2003). However, a plaintiff must show that individuals participated in the adverse action or had prior knowledge of such action. *Id.* at 1183. Plaintiff has alleged that Defendants Sheri Noviello, Elizabeth Frander, and Stephanie Lewis each personally participated in the conduct that he claims constitutes retaliation. Thus, Plaintiff has sufficiently stated a claim against each of these Defendants in her official capacity.

### CONCLUSION

In sum, the claims against the Board of Regents of the University System of Georgia and the claims against Defendant Errol Davis should be dismissed. Additionally, as Defendants June Goyne and Tonya Kemper are sued only in their official capacities, the claims against them should be dismissed. The claims against Defendants Noviello, Frander, and Lewis in their individual capacities should remain pending, and the claims against Defendant Mescon in his official capacity should remain pending.

WHEREFORE, IT IS HEREBY ORDERED that Plaintiff's motion to proceed *in forma pauperis* is granted, and Plaintiff's motion for appointment of counsel is denied. Furthermore, IT IS HEREBY RECOMMENDED that claims against certain Defendants be dismissed as discussed above. Under 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the UNITED STATES DISTRICT JUDGE

within FOURTEEN (14) DAYS after being served with a copy hereof.

SO ORDERED and RECOMMENDED, this 2nd day of May, 2011.

                                              S/ Stephen Hyles
                                              UNITED STATES MAGISTRATE JUDGE